argument of the day and that is Karen Bauer versus Beard. Ms. Freeland. Sorry about that. May it please the court. My name is Lisa Freeland and I'm here today on behalf of Peter Karen Bauer. I reserve three minutes for rebuttal. Your honors, the state court adjudication in this case of Mr. Karen Bauer's claims that both the trial court and trial counsel failed to properly respond and act in the face of sufficient indicia of incompetence is both an unreasonable application of clearly established federal law under 2254 d1 and an unreasonable determination of the facts in light of the evidence under Ms. Freeland. With that in mind, asking us to make a determination in light of the evidence presented, why is it that we're without any real trial record to deal with here? I'm sorry, your honor, I didn't hear the last. Why is it that we're without the trial record to deal with? Why were you without the trial record? Are you talking about the appendix, your honor? Yeah. And that's something that I'm glad that you raised. Under the rules of federal procedure, appellate procedure, and under the local rules, in habeas cases, the court does not require counsel to provide an appendix with the transcripts because the entire record is transmitted to the court. I used to do that regularly in the last couple of cases. I've been following the rules because of the additional work of preparing the appendices. If that's your Don't you think it would have been helpful, though, or even portions would have been helpful given the nature of the claim that is being made? It certainly would have been helpful, your honor. It was my under... Is it available? I mean, I believe that I know, given my own history with the state court system, that sometimes these are records that are not easily obtainable. No, they were available and they were in the district court record and really following the rules. And I'll tell you, your honor, it's the last time I'll do it. I did it in a couple of other cases and I think the lesson learned here is that although the record is with the court, we're no longer all in the same building. We're dealing with CMECF. I think it would have been available, but I think moving forward in the future, I would include those transcripts. I do think they're helpful, although I do think that both of the parties in their briefs identified accurately portions of the transcript for the court, but at the same time, seeing the transcript and reading it in its order and getting the flow is something that I think is necessary for resolution of the claims. So I apologize for that in advance and I certainly, in the future, won't follow the rules and will follow my better judgment instead. With that said, I think that the record here, and I think one of the points that your honor's question brings up immediately, is that the district court, in this case, applied the wrong AEDPA standard. It applied only 2254E1, which is the presumption of correctness, and bypassed completely 2254D1 and D2. As this court has held in Lambert v. Blackwell, the 2254D and E are two very separate analyses, and in cases like this one, where the claim that the state court determination was unreasonable is a claim that's based solely on the state court record and no further development of the record in federal court, that this case is only properly evaluated under the prongs of 2254D1, that being the contrary to or unreasonable application of clearly established federal law, or under D2, the unreasonable application determination of facts in light of the evidence. So my initial argument to the court would be that, as a matter of law, a reversal is required. The district court failed to apply the correct standard in this case. First of all, you'll acknowledge that the Supreme Court has not spoken on the very issue that you have raised. Absolutely. I acknowledged it in my brief, and I'll do it here today. And in Lambert v. Blackwell, we explicitly declined to impose an order of analysis in Lambert v. Blackwell. So for you to say that there demands a reversal, I'm not sure where you get that from. Well, Your Honor, although I agree with a part of what you've said, in Lambert the court was very clear in distinguishing between two types of situations. One is where the factual matter at issue is a subsidiary factual finding. E1 will clearly apply to subsidiary factual findings, and I think that's clear from Lambert. It also distinguished where the factual findings were not subsidiary, as they are in this case, the ultimate determination of fact. And that's a situation where D1 and D2, really D2, unreasonable application of the determination of the facts, would apply. The other distinction that the court made in Lambert is when looking at the AEDPA standards and looking at the record, are we dealing with claims that are based solely on the state court record, or are we dealing with claims that were further developed in federal court? We all know that there was no hearing in federal court. We have no additional facts that rely solely on the state court record, and Lambert teaches that where you're dealing with an ultimate factual finding based wholly in part on the state court record, that E1 is not the appropriate analysis. I would agree with Your Honor that the Supreme Court has not resolved this, and in Wood v. Allen, I think it's pretty clear they decidedly opted not to decide this issue and instead left it to you and the rest of your brethren. But right now we're dealing with Lambert as the only decision in this court that makes these distinctions, and it applies with full force in this case. You want us to reverse, you said that. What happens next? Reverse and do what? Direct what to happen? Well, I think it would depend on what this court decided ultimately, but what I was talking about initially is that it would be a remand, a reversal and a remand to the district court so that the district court could properly analyze, could properly analyze the claims under AEDPA and not apply, I mean, the only thing that the district court did, it said, this is a factual finding, E1 applies, I have to presume it's correct, you lose. It's a much different analysis under 2254 D1 and D2. The court has to grapple with whether the evidence that was presented in state court, the record evidence, supports the factual findings, reasonably supports the factual findings of the state court. And more than that, it has to deal with whether clearly established federal law required, reasonably required a different result. And those are two very important questions that this district court never dealt with in this case. And I would submit that analysis under the appropriate framework would result in relief for Mr. Karenbauer. Well, ultimately, are you asking that a hearing be held as to whether he was competent at the time of the trial? Because if there was no hearing, what you're saying is that the trial court and the state court should have gone into it more. But if there was no hearing, then he didn't have an adequate basis for a determination. I guess his determination is sort of implicit. So would it be too late to have a hearing on that now? It's quite a few years. But on the other hand, there were doctors who examined him at the time and gave reports. I think three. Maybe they're available. Well, Your Honor, there were three doctors that examined him. There was one that gave a report. And I do know, as a matter of fact, that all three of them are alive, well, and available. With that said, I believe this case could be remanded to the district court, and a proper analysis under EDPA, absent an evidentiary hearing, would result in relief. Mr. Karenbauer is entitled to relief on the record. I'm sorry, Your Honor. In the state of this record, can't we just as easily do that and make a determination under D2 that it's not an unreasonable application of Federal law? I believe that you could. Sorry. I believe that you could. With that in mind, what is unreasonable about the factual determination made here, given what was before the trial check? Well, I think I'm going to look at the PCRA court's decision and the Superior Court's decision, because they both made findings, but some of them are overlapping. It is all in the briefs, but I'll run down for you, because I think they're important. But initially, you would acknowledge, wouldn't you, that there was at least an implicit determination made by the common police court judge in going forward with the trial? Absolutely. Implicit findings. Absolutely. And I may even go so far as to say that it wasn't implicit, but I understand Your Honor's characterization of it as implicit. I mean, that's where all things went wrong. And one of the things that both of the state courts relied on that I say is unreasonable is that they specifically found that the common police court conducted a colloquy and an inquiry and made a finding of competency. A colloquy and inquiry of whom? Of my question, exactly. I have been unable to find a colloquy. There was an inquiry of counsel, right? There was an inquiry of counsel. And Your Honor, if you look, it's in our volume two appendix at page 22. It's a transcript of the July 15th proceedings. The original transcript pages are 62 and 63, and the appendix is 21 and 22. There is a point here where they're discussing the need for additional mental health specialists. And the representative from the Commonwealth says, the reports came back, there's no insanity defense, so there's no competency issue. The court says a couple lines down, thank you. Do you know what we're talking about, he says to Mr. Karenbauer. The defendant says, yeah. The court says competency and insanity are two different things. One can be both, and one can be one and not the other. I'm concerned about your understanding what's going on, but you don't have any mental illness that would adversely affect your ability to know what's going on and understand and make intelligent decisions. All right, what counsel approach? To me, reviewing the entire state court record, what I've just read to you, is the only thing that could be properly characterized as a colloquy. Usually when I hear the word colloquy, I think of the defendant. But as Your Honor pointed out on July 22nd, following the attempted suicide, the court did inquire of counsel. And isn't the view of counsel as to the competency of his client ultimately, as well as his view of whether his client can cooperate, whether his client can understand and so forth, appropriate information, appropriate evidence for the trial court to consider in reaching ultimately a competency determination? Absolutely, and it's some evidence, but it's not all evidence. And in this case, the most critical fact is that counsel's statements were equivocal. And also were based on, he was relaying statements from Mr. Karen Bauer. They weren't even his reasoning judgment. But going into trial, what was extant from the at least two professionals, a psychologist, I believe, and psychiatrist who had examined Mr. Karen Bauer? Not prior to the suicide attempt. Only one doctor. I didn't understand that. I said prior to the attempted suicide, only one doctor, a psychologist, Dr. Albert Scott, had completed his evaluation of Mr. Karen Bauer, only one. All right, and what was his evaluation? His evaluation was that Mr. Karen Bauer was in fact competent. This was during the course of or within days of jury selection? Prior to jury selection. Prior to jury selection, yes, Your Honor. And the suicide attempt occurs during the course of individual voir dire? The day before the weekend. Yes. Intervening during the jury selection. The day before the final day of jury selection, that occurred. And my understanding from the transcript is that defense counsel visited Mr. Karen Bauer at the jail and was questioned about that. He advised the court of what had happened. He was questioned about that on the record. The court advised him to go back and speak with Mr. Karen Bauer and come back. One point that I would like to... So under spec, what did he say? What he said was that he originally was disoriented, agitated, wasn't sure if he could continue. When he came back, he said that he felt that Mr. Karen Bauer was better and that he... Mr. Karen Bauer told him that he thought he could proceed. So what counsel said to the court was not, I've looked at Mr. Karen Bauer and I think he's okay. He said, I talked to Mr. Karen Bauer and Mr. Karen Bauer said X. One of the things that I think is really critical, and I see that my light is on, if I could just finish this sentence. Because DROP, I think, the clearly established federal law in this case, DROP versus Missouri, the Supreme Court of the United States talks about a suicide attempt that was contemporaneous with trial. And it says that such an attempt suggests a rather substantial degree of mental instability contemporaneous to trial. I think at the core of my argument is that on that day, in those few minutes that trial counsel went back to talk with Mr. Karen Bauer, he was unequipped. Mr. Karen Bauer was unequipped. And indeed, the trial court was unequipped to deal with what the Supreme Court has called a substantial degree of mental instability. You know, it was one thing that puzzles me about the formation of these things. The Supreme Court says, well, the court has an obligation on its own initiative to have a hearing if there's a reason for it. I mean, not just any case, obviously. And yet, how does that mesh with a plain error standard? Because you now have an attorney who's conceived that, well, this is an issue, obviously, and doesn't make a motion for a hearing. Now, usually, if somebody doesn't ask for something, you have to show plain error if you don't get it. Now, would we say that you'd have to show that the court committed a plain error? Or, you see what I mean? I do, Your Honor. I'm not going for a hearing. And yet, if it has an obligation on its own motion to have the hearing, I'm not sure that the plain error standard figures in the whole thing. And, Your Honor, I don't think that the plain error figure is part of this. What we're dealing with instead of plain error on direct appeal is ineffective assistance of counsel. That's the way that we're raising the failure of counsel. I understand that. It's only what that leads to or the reason why he's ineffective. But the point of the matter is, though, if, in fact, there was no basis, you're saying that he should have asked for a hearing on competency. Counsel should have, yes. Counsel should have, and he's incompetent for not asking. And yet, he himself knew that that was an issue, knew that his client had attempted suicide, knew the results of a prior test, went and saw him and interviewed him. Now, why was he incompetent then? Because that's a heavy standard. And also, you would have to show not only was he incompetent, that he was prejudiced. Your client was prejudiced by the incompetency. Actually, Your Honor, under the AEDPA regime that we have to follow here, I actually, and because of the claims that the Certificate of Appealability granted, Mr. Karenbauer originally had claims both that he was tried when he was incompetent and this failure to act under, you know, where there was reason to doubt competency. This Court granted a Certificate of Appealability only on the latter issue. And so, under DROP, due process requires and due process is violated any time the trial court fails to inquire when there's reason for him or her to do so. And under the Sixth Amendment- It's reason to doubt. Reason to doubt. Or it's otherwise phrased a reasonable cause to believe. And it's also been, you know, talked about as sufficient indicia of incompetency. Those are the three phrases. But due process not only protects against being tried while incompetent, it protects the trial of someone who might be incompetent. And that's where we are with the issues that were granted in this certificate. And the only issue of prejudice, there is no issue of prejudice when it comes to the with the trial court's actions. Prejudice only comes into play under Strickland when we're talking about the Sixth Amendment claim in our case that trial counsel should have requested a hearing. And prejudice is shown for that claim if trial counsel had requested, is there a reasonable probability that a hearing would have been granted? The issue in this case is not whether Mr. Kierbaugh was incompetent. Don't you have to show more, however? I'm sorry? Don't you have to show more than just the fact that a hearing would have been granted if it was requested? Have you asserted that he was incompetent? We did assert that claim, Your Honor. And this court did not allow us to proceed on it. And that's something that I have no idea what was behind that. This was the claim that the certificate identified. This was the claim that we briefed. And under DROP, it's very clear that due process also protects you if you're tried when you're likely incompetent. Is this case on all fours with DROP? I don't believe it's on all fours. There are factual distinctions. But again, as I pointed out in my brief, the fact that it can be distinguished is irrelevant here because I have not challenged the state court determination as being contrary to clearly established federal law. I've challenged it as an unreasonable application. And the material indistinguishability is only relevant when you're talking about contrary to portion of 2254 D1. Doesn't that certainly, isn't that certainly relevant when you're talking about an unreasonable application when it's the application of the law from DROP that you're asking us to evaluate? The Supreme Court of the United States has said that they're two separate analyses. The standards are fully set forth in the briefs. It is a different question. I concede that the question I raised is an easier one for me to prevail on. I didn't challenge it as contrary to because I have not been able to, under Supreme Court law, identify a Supreme Court case that is indistinguishable. All right. Thank you. Thank you very much. Thank you, Your Honor. May it please the Court, James Barker from the Office of Attorney General. Before I begin, I guess as a preliminary matter, I should address the matter of the reply brief that was filed in our purported waiver. We would submit that we have certainly addressed the substance of counsel's argument so that there would be no waiver. I would also point out that under this Court's opinion in United States v. Palullo, that rule really applies to appellants because they have the burden of demonstrating error to the Court, and I believe wouldn't waive an issue. It's also pointed out that I have somehow distorted the facts within my brief. I don't believe that I've done that. Every fact that I've recited has a citation to it, and if the Court wants to compare those facts with what's in the record, I invite the Court to do so. But, you know, I'm told that I somehow misstated the record when I said, counsel reported that Karen Bauer was upset and said that he did not know if he could go through with trial. However, counsel was unaware of any basis for that statement. My statement specifically was, or defense counsel's statement specifically was, he basically told me that he's upset. He doesn't know if he can go forward with this. I don't know any basis for why he's saying that. Now, when the sisters at St. Madeline's taught me how to read, I think I got my reading comprehension, and those seemed the same to me. So I would suggest to the Court that every statement that I made that is challenged in this reply brief is pretty much the same. If the Court would like a written response to the reply brief, I'll be happy to do it, and I'll go through it point by point in exactly the same way. Let's move on. Basically, what this case represents is whether or not the trial court record supports the trial court's determination affirmed by the Superior Court that there was not sufficient indicia of incompetency. And we would submit that the record amply supports that determination. It is a reasonable application of the facts. It is a reasonable application of clearly established law. Whether or not Mr. Karen Bauer was actually incompetent is a factor, I suppose. Whether or not there's actually any evidence that he was incompetent. And there was none. All of the doctors who examined him made no such determination. In fact, Dr. Scott specifically determined that he was competent the way that he termed it was he's obviously able to consult and participate in his defense. But one of the tests, in any event, the language of our own case, Taylor v. Horne, requires indicia of incompetence. What would you make, what should be made of a suicide attempt intervening here as it did between a report of competency, the stressful circumstances of what was then a capital homicide prosecution, and then the attempt, it appears, to take one's own life? Might that not reasonably be taken as some indication of incompetence? It could be taken as an indication of incompetence. However, by itself, it's not sufficient. And if the court looks at droop and its progeny, that's made clear. You look at all of the circumstances. And the circumstances here are this gentleman made what was determined to be a suicide attempt and was usually referred to as such. However, as the Superior Court pointed out, there was some question as to the authenticity of the attempt. Even assuming that it is one, defense counsel spoke to him over that weekend when it occurred, told the court, well, he was very upset. I was having a hard time understanding him. But after a while, he calmed down and he seemed the same as before. In other words, he seemed the same as when he was determined to be competent by Dr. Scott. Mr. Parker, what's so lacking in the facts of this case that makes this case factually different from droop? Well, for one thing, in droop, defense counsel moved to have the defendant examined and kept repeating to the court, this guy's out of his mind. That's one thing that the suicide attempt in that case was considerably more serious as well. I believe he shot himself. So there were many more. There were also more serious psychological problems. Part of the problem here was that the details were not presented to the court at the time of the suicide attempt. The court didn't really hear the details of Mr. Karen Barrow's mental history until later. But even then, he was depressed. There were some other relatively minor disorders. But there was nothing that would indicate that he was completely incompetent to stand trial. So that's the basic distinction. The level of information that was before the trial court here simply does not meet what was before the court in droop. Again, examining all these facts, defense counsel's representation that Mr. Karen Barrow was competent, at least to his perception, and I would point out that after the suicide attempt, he was specifically asked about that. And that's in the transcript of July 22nd at page 4. He specifically asked. And his response was, no, I believe that he's competent at this point. So defense counsel made an affirmative representation to the contrary as opposed to the other cases where defense counsel was actually trying to argue that he is incompetent and we need to have him examined. He was at that point asking on behalf of Mr. Karen Barrow for another examination. But basically, his view of that, when you read his statements to the court, was Mr. Karen Barrow didn't like the results he was getting, so he wanted to try another doctor. You know, I wondered about something in our certificate of appealability, because I don't think it's right. The first statement was whether the issue is whether the trial court violated Karen on the issue of his competence. But the court didn't decline to conduct a hearing, did it? To me, declining is have a hearing. No. But in other words, I don't think it's stated right. I think it's whether by not on its own initiative. I think that's correct, Your Honor. There was no sua sponte order for a hearing or even an examination. There was no request. So it's not really declined as much as the court simply failed to undertake a duty, which the defense argues it was required to do. Now, it was argued, okay, so the court didn't do the duty, didn't do its duty, because it should have seen it. And yet, at the time that the court, I'll even use the word declined, that's not correct, that the court didn't do its duty, it knew that there was a report that he was saying, and it also knew that his attorney saw no reason why the trial couldn't go forward. That's correct. And that's the foundation of our argument here today, Your Honor, that based on those representations, the court had no reason to think that Mr. Karenbauer was incompetent. And in fact... So the argument has to be to reverse that, well, no matter what the attorney said, the court, and the attorney, you know, it's a difficult case, obviously, on the facts. Yes. But that the court should have said, I don't care what you say or didn't say, we're going to have a hearing here, whether you like it or not, in effect. And not only is that the issue before the court, but the state courts decided that was okay, that the judge didn't do that. And the question is whether or not it's unreasonable for them to have made that determination. What of the fact that counsel representing Mr. Karenbauer had had a professional relationship with him of, I believe, about 11 months duration from shortly after the offense was committed up to the time of trial and the incident giving rise to these claims? I would say that that supports our position. As we pointed out, in Leggett, this court determined that trial counsel's opinion is extremely important when you talk about a determination whether or not there's this indicia of incompetence. And this attorney would have known this client very well. Obviously, when there's a suicide attempt, this is the person who contacts him and basically talks him down. How much time had the common police court judge had to actually observe Karenbauer in court and interacting with his attorney and with the proceedings themselves? I did not check the record to know. How far along in the jury selection, individual voir dire process, had the proceedings gone? I believe it had been going on for about a week. I think it started on approximately July 15th of 1996, and we're talking about July 22nd. Also, I believe that there had been prior hearings, possibly a suppression hearing, with respect to the statements made by Mr. Karenbauer. So there had been prior proceedings as well. I cannot give the court, like, a firm number of days that Mr. Karenbauer had been in court, but certainly the judge, it was Judge McCracken, had seen him a substantial amount of time. If the court has no other questions, I'd leave it. Well, in death penalty cases, that, well, some, we actually, I actually wrote an opinion once, although he later changed his mind, was whether or not a defendant could say, look, I'm not appealing the death penalty, execute me. We got a published opinion, said he didn't have to appeal it. As far as I know, the other courts don't say that, they make an appeal. But anyway, but I could see where a person might be totally competent to defend against the trial, but might make a reason, a decision, is that, that person explain, look, life in prison, I mean, it's like death anyhow by a thousand cuts. I'd rather be dead. I mean, I could see where you might think that. And the argument that we usually see, Your Honor, is that the mere fact that he would But I think that you make a good point. If I were, you know, 25, and I'm looking at a good another 20 or 25 years on death row, I might choose to get it over with as well. I can't, hopefully I never find myself in that position. But I think I tend to agree with you. I don't know that that decision would necessarily be an irrational one. But I think it's usually used that way. It, the person, you have to relate it to the issue. The issue is, could he participate in the defense and so forth? And it's difficult to say that because he makes that value judgment. A lot of people would say, look, I'm born for life, because no matter what they say, no parole, something might turn up. I think that a rational person might think that. That's correct. But you might say, look, I'd rather be dead and yet be perfectly competent to try the case. I mean, it's a different thing. And as I recall, the only defendants to be executed in Pennsylvania since the death penalty was reinstated all chose to waive their appeals and did go that route. That's not true, because I wrote an opinion in the Zollermeyer case. Oh, you're correct, Your Honor. And that was, and he was executed. He fought that. But I think Mr. Heidnik did waive all of his appeals. The court has no other questions. Thank you very much, Mr. Barker. We'll have Ms. Freeland back for rebuttal. Just a few points from the questioning. Just to follow up on what Judge Greenberg was just saying, I know I said this before, but I got to say it one more time. The Supreme Court of the United States characterized a pretrial suicide attempt as suggesting a rather substantial degree of mental instability. So whatever this court may or individuals on this court may feel about somebody's choices, life and death choices, the Supreme Court has already told us for purposes of legal analysis what that means. And a second point is that the United States Supreme Court in Wiggins v. Smith has also told us that when we're evaluating claims under 2254 D1 and D2, that reviewing courts, reviewing federal courts are obliged to stick with what the state court said. You have to analyze the actual analysis of the state court, not some of the things that Mr. Barker has put in his brief about whether the suicide attempt was real or not. But this court's duty is to look at what the state court did and determine whether it's reasonable. If you were writing the opinion here and the opinion ended up for the foregoing reason to reverse the order of the district court and remand, to do what exactly? As Judge Fischer pointed out before, I think this court could find, could just reverse and find that Mr. Karrenbauer is entitled to relief because the state court adjudication was unreasonable. If this court were, relief would be in the form of a new trial. Actually, it would be a conditional relief at ordering the Commonwealth to release him within 120 days absent a retrial. The Supreme Court suggested, didn't it, that you could not after a long time. See, when I read the case, I thought to myself, well, I suppose you could have the hearing now on whether he was incompetent then. And if there was a lot of testimony, you know, a lot of things are heard years later. What happened? Why couldn't that be done? But the court didn't seem to be too happy with that alternative. I don't, I mean, I do believe that if there were an evidentiary hearing in the district court, that Mr. Karrenbauer would be able to present additional evidence to support his claims. But our position is relief is warranted on the record as it stands. The other thing I want to point out is that there was other indicia of incompetency. There were two outbursts by Mr. Karrenbauer, one in open court and one during a recess. While he was alone in a room, he was overheard screaming to himself. And Detective Eve testified about that in trial. And it's noted in the PCRA court's opinion at page nine. Wasn't the outburst at sentencing? The outburst at sentencing had to do with his mother's testimony. Wasn't that the outburst? That was the one that was in court. There was a second outburst that was out of court when Mr. Karrenbauer was overheard in a room alone yelling at himself. And I want to just point out one more time that on July 15th, prior to the suicide attempt in this case, the common pleas court judge addressing Mr. Karrenbauer said, I'm concerned about your understanding about what's going on. We don't have a record for what led the court to say that, but Judge Smith, you asked about the contact between the defendant and how much of an opportunity the trial court had had to observe. Something was observed that led the trial court on July 15th prior to the attempt to make this statement. Of course, by proceeding, one has to logically assume that whatever that concern was, was obviated. It must have been obviated. The problem in this case is that the suicide attempt, as a break in the chain of the prior events, was not given the focus that the United States Supreme Court says it should have been. This was something that mental health professionals needed to be involved in. This is not something that trial counsel, who was already waiving rights left and right, could handle. Thank you very much. We appreciate your position. Thank you very much. The case was well-argued, counsel. We thank you for that, and we'll take it under advisement. Thank you.